**Earl M. BAKER, Salt Lake County Assessor, Plaintiff,**

v.

**TAX COMMISSION of the State of Utah et al., Defendants.**

**No. 13312.**

Supreme Court of Utah.

March 12, 1974.

1. Hindmarsh v. O. P. Skaggs Foodliner, 21 Utah 2d 413, 446 P.2d 410 (1968).

Carl J. Nemelka, Salt Lake County Atty., Richard S. Shepherd, Deputy Salt Lake County Atty., Bill Thomas Peters, Sp. Deputy County Atty., Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., G. Blaine Davis, Ronald K. Fielding, Asst. Attys. Gen., Salt Lake City, for defendants.

ELLETT, Justice:

This is an original action in the nature of certiorari to review a decision of the Tax Commission of Utah, hereafter called the Commission. Only two matters of law are presented for our determination:

1. Can the Commission remove from the assessment rolls property which is exempt from taxation but which was wrongfully taxed?

2. Was the appeal from the County Board of Equalization (hereafter called the Board) timely filed?

The plaintiff is the duly elected and qualified assessor of Salt Lake County. He caused certain properties to be assessed for taxes which in the past had been considered exempt. There were more than ninety petitions filed with the Board, and thereafter that many appeals were taken to the Commission. The property in question belongs to various organizations including the Episcopal, Lutheran, Evangelical, and L. D. S. Churches, and also the Y. M. C. A., the Masonic Temple, eleven labor unions, cemeteries, gymnasiums, the Ladies Literary Club, and others.

The plaintiff urged the Commission to dismiss the appeals on the ground that the determination of whether or not property was exempt involved a legal determination of the meaning of the Constitution and of the statutes and that the Commission was not able to make that determination. He

further claimed that the appeals from the ruling of the Board were not timely filed; therefore, the Commission was without authority to entertain the appeals.

The Commission denied the motions and ruled that it had power to determine the matters before it.

The assessor then filed this suit to have the ruling of the Commission reversed.

It is of interest to note that while the plaintiff claims that the commission is not qualified to pass on the legality of these matters, he has no such doubt as to his own ability to determine them correctly.

In this matter we are not called upon to determine whether the assessor was correct or not in making the assessment. The question is whether an owner of realty which is improperly taxed must pay the tax under protest and then sue in the courts to recover the same, as provided by Section 59–11–11, U.C.A.1953. That section says that a dissatisfied taxpayer *may* pay under protest, etc.

Section 59–11–14, U.C.A.1953, reads:

The remedy hereby provided shall supersede the remedy of injunction and all other remedies which might be invoked to prevent the collection of taxes or licenses alleged to be unlawfully levied or demanded, *except in unusual cases* where the remedy hereby provided is deemed by the court to be inadequate. [Emphasis added.]

This section has reference to remedies in courts and does not purport to prevent appeals to the Commission. This section is to be read in connection with Section 59–11–10, U.C.A.1953, which is as follows:

No injunction shall be granted by any court or judge to restrain the collection of any tax or any part thereof, nor to restrain the sale of any property for the nonpayment of the tax, except where the tax, or some part thereof sought to be enjoined, is illegal, or is not authorized by law, or the property is exempt from taxation. . . .

This case would seem to be unusual because the assessor has reversed the determination of all his predecessors and has unilaterally made assessments on properties which had heretofore been considered exempt from taxation. If in fact the property is not exempt, then the assessor is to be commended for his industry and wisdom, and the fact that it is unusual is not to be considered in derogation of his work, but *if it is exempt, then the taxpayers should have remedies in the administrative field without going to the expense of a court trial.*

Section 59–7–1, U.C.A.1953, requires the Board to complete the business of *equalizing* taxes by June 20 and further provides that all complaints regarding the assessment of properties *where notice has not been given* of a hearing are deemed denied as of that date. The section is silent as to those cases where notice has been given and the matters are being contested.

The petitions were not decided by the Board until after June 20. However, the Commission extended the time for the Board to act in the matters pursuant to Section 59–5–46(10), U.C.A.1953, which reads:

To reconvene, whenever the tax commission may deem necessary, any county board of equalization; and it may in its discretion extend the time for which any county board of equalization may sit for the equalization of assessments. . . .

■ There is no merit to the contention that the Commission lost jurisdiction simply because these appeals from the ruling of the Board were not taken within five days after June 20, when those rulings were not even made until September 15.

■ As to the power of the Commission to remove exempt property from the assessment rolls, the law is set forth in 72 Am.Jur.2d, State and Local Taxation, § 800, as follows:

. . . Power of a county board of taxation to "revise and correct the assessment in accordance with the true

value of the taxable property" necessarily includes the right to cancel the assessment entirely where the property is determined to be not taxable. . . .

See also the case of City of Newark v. Fischer, 3 N.J. 488, 70 A.2d 733, 21 A.L. R.2d 280 (1950).

Section 59–7–10, U.C.A.1953, pertaining to appeals to the Commission from rulings of the County Boards of Equalization provides for notice and a hearing and states the power of the Commission in the following language:

> . . . At the hearing on said appeal the tax commission may admit additional evidence and make . such order as it deems just and proper, and make such correction or change in the assessment or order of the county board of equalization as it may deem proper. . . .

■ The Commission thus has the power to correct or change the orders of the Board, and it may make such an order as it deems proper. If it errs in making the order, then, of course, the assessor or any aggrieved person may have this court review the error.[1]

The fact that administrative appeals are provided for by law compels one to believe that the judgment of the Commission is superior to that of the Board and that of the Board is superior to that of the assessor. At least such is the case until some court of competent jurisdiction finally determines the matter.

The case of County Board of Equalization of Kane County v. Tax Commission, 88 Utah 219, 50 P.2d 418 (1935) is controlling here. There the assessor and Board of Equalization improperly assessed property. An appeal was taken to the State Tax Commission, which *cancelled* the assessment. The matter was brought before this court on a writ of review, and in affirming the Commission this court at pages 226 and 227 of the Utah Reports, 50 P.2d at page 422, said:

Since the commission has general supervision over the tax laws of the state and over those charged with the enforcement of those laws, and has the power on appeal to make such correction or change in the order of the county board of equalization as it may deem proper, it must necessarily follow that it is authorized to cancel, vacate, or change an assessment when, upon a proper showing, it has been determined that the assessment should be so cancelled, vacated, or changed. . . .

■ We hold that the Commission does have the power to remove from the assessment rolls property which it finds to be constitutionally or statutorily exempt from taxation and that it is not necessary for a taxpayer to pay under protest and be put to the expense of a lawsuit until he has exhausted his administrative remedies.

The ruling of the Commission that it does have the power to exclude from the assessment rolls property which it finds to be exempt is affirmed. No costs are awarded.

CROCKETT, J., concurs.

HENRIOD, Justice (concurring):

I concur, realizing that I am the swing man in a disturbing tax atmosphere that has provoked a transcendental debate in this state over its many historical decades: The problem as to what is or is not taxable property owned by an eleemosynary institution or agency. The main opinion touches on this touchy subject by the mere mention of properties owned by the Episcopal, Lutheran, Evangelical, Mormon, Y. M. C. A. or Masonic organizations. However, this recitation of denominational personalities, in my opinion, has nothing to do with this case save to provoke some sort of feeling between the religions, the money changers in the Temple, and what a plagued taxpayer perhaps naturally thinks, with his moral, mental confusion between which is which, God or the tax collector,

1. Sec. 59–5–76, U.C.A.1953.

wherefor he is wont to dub such collector as a tyrant. Most times such collector is not, but really is an erstwhile decent public servant. The problem here is not a religious one. It is a question of authority of a state agency,—not that of the Bishop or the Pope. This author believes thay are men who seek no quarter nor any haloed confrontation.

In my opinion there is no alternative but to concur in the main opinion or else "cancel" County Board of Equalization v. Tax Commission, cited and quoted in the opinion decided by such heavyweights on the Bench as Hanson, Hansen, Folland, Moffat and Wolfe,[1]—nearly forty years ago.

Since that time, the Kane County case has never been reversed, has had at least venerability by silence and approval of its grandchildren,—who, if its soundness is questioned must seek sanction from the legislature to change that case and not by judicial fiat.

TUCKETT, Justice (dissenting):

I respectfully dissent to that portion of the majority opinion which deals with the power of the State Tax Commission to remove property from the assessment rolls on its finding that the property is exempt. Article XIII, Section 2 of the Utah Constitution specifies what property shall be exempt from taxation, pertinent provisions of which read as follows:

All tangible property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. The property of the state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon *used exclusively for either religious worship or charitable purposes,* and places of burial not held or used for private or corporate benefit,

shall be exempt from taxation. [Emphasis added.]

The phrase "used exclusively for either religious worship or charitable purposes" is comprised of ordinary words used in the English language and does not require further definition or construction. If further definition or construction should be needed, that should be left to the courts rather than to an administrative agency.

Section 59-5-30, U.C.A.1953, imposes the duty upon the county assessor to assess all of the property within the counties subject to assessment by him to the end that no unjust assessment be made nor anyone escape a just and equal assessment. The assessments made by the assessor are subject to review by the County Board of Equalization at the instance of any taxpayer who requests a hearing by the Board. The person then appeals from the County Board of Equalization to the State Tax Commission.

The State Tax Commission and the County Boards of Equalization are provided for by Article XIII, Section 11, of the Utah Constitution, pertinent provisions of which are as follows:

There shall be a State Tax Commission consisting of four members, not more than two of whom shall belong to the same political party. The members of the Commission shall be appointed by the Governor, by and with the consent of the Senate, for such terms of office as may be provided by law. The State Tax Commission shall administer and supervise the tax laws of the State. It shall assess mines and public utilities and adjust and equalize the valuation and assessment of property among the several counties. It shall have such other powers of original assessment as the Legislature may provide. Under such regulations in such cases and within such limitations as the Legislature may prescribe, . . . and equalize the assessment

---

1. During the author's practice I had on occasion my misgivings about this generality,— usually on the occasion of my losing my appeal at the hands, or pens, of these revered gentlemen, to whose heirs and successors I hereby apologize.

**208**

and valuation of property within the counties.

\*     \*     \*     \*     \*     \*

In each county of this State there shall be a County Board of Equalization consisting of the Board of County Commissioners of said county. The County Boards of Equalization shall *adjust and equalize* the valuation and assessment of the real and personal property within their respective counties, subject to such regulation and control by the State Tax Commission as may be prescribed by law. [Emphasis added.]

The words "adjust and equalize" are not synonymous with cancel.

The powers of the County Board of Equalization are set forth in Section 59–7–2, U.C.A.1953, which provides as follows:

> The county board of equalization has power, after giving notice in such manner as it may by rule prescribe, to increase or lower any assessment contained in any assessment book, so as to equalize the assessment of the property contained therein and make the assessment conform to thirty per cent of the reasonable fair cash value of such property.

An appeal from the County Board of Equalization to the State Tax Commission is provided for by Section 59–7–10, U.C.A. 1953, which provides for the proceedings to be followed in taking such an appeal, and it also provides, as mentioned in the majority opinion, that the Tax Commission may admit additional evidence and make such order as it deems just and proper. There is no power granted to the Commission to consider matters which were beyond the powers of the County Board of Equalization.

In my study of the various provisions of the Constitution and the statutes controlling here and in the majority opinion I find no pronouncement which gives to the County Boards of Equalization or to the Tax Commission authority or power to make a determination as to what properties are exempt from taxation.

CALLISTER, C. J., concurs in the views expressed in the dissenting opinion of TUCKETT, J.