KIMBALL CONDOMINIUMS OWNERS
ASSOCIATION, Petitioner,

v.

COUNTY BOARD OF EQUALIZATION
OF SALT LAKE COUNTY, County As-
sessor of Salt Lake County, and Utah
State Tax Commission, Respondent. ——

No. 950403.

Supreme Court of Utah.

Aug. 8, 1997.

Wayne G. Petty, Salt Lake City, for Petitioner.

Jan Graham, Att'y Gen., John C. McCarrey, Asst. Att'y Gen., Salt Lake City, for Tax Commission.

Douglas R. Short, Mary Ellen Sloan, Salt Lake City, for Salt Lake County Respondents.

STEWART, Associate Chief Justice:

Kimball Condominiums Owners Association (the Association) challenges Utah State Tax Commission rulings on property tax assessments for 1990, 1991, and 1992 on condominiums owned by members of the Association. Rather than valuing the Association's condominiums according to the market value of each condominium as if it were a single residence, the Salt Lake County Assessor valued each condominium based on the market value of all the timeshares in that condominium. The Salt Lake County Board of Equalization rejected the Assessor's valuation method for the year 1990 but approved it for the years 1991 and 1992. The Assessor appealed the Board's 1990 valuation and the Association appealed the Board's 1991 and 1992 valuation to the Tax Commission.

With respect to the 1990 appeal, the Association contested the County Assessor's authority to appeal decisions of a county board of equalization to the Commission. The Tax Commission rejected the Association's motion to dismiss the Assessor's appeal, ruling that the Assessor had standing to appeal and had filed the appeal in a timely manner. On cross-motions for partial summary judgment, the Commission rejected the Association's argument that the County's valuation formula violated Utah Code Ann. § 57–8–27(4). In its final decision, the Commission ruled that the County's method was consistent with, indeed mandated by, statutory and constitutional law requiring property to be valued at fair-market value. The Association now attacks those rulings.

In this Court, the Association reiterates its argument that the Assessor did not have statutory authority to appeal to the Tax Commission the order of the Board of Equalization's 1990 valuation decision. The Association also maintains that with respect to the assessments for all three years, Utah Code Ann. § 57–8–27(4) provides that timeshare interests "may not be separately taxed but shall be valued, assessed, and taxed at the unit level" and requires valuation of the condominium units according to the market value of each condominium as a unit, irrespective of its subdivision into timeshares. The Tax Commission and the County contest the Association's interpretation of the statute and assert that article XIII, section 2(1) of the Utah Constitution mandates the particular formula approved by the Commission.

## I. FACTS

The Kimball condominiums are located near downtown Salt Lake City.[1] The condominium units were sold under a timeshare scheme in which the use of each unit is divided into fifty timeshare periods. Purchasers of timeshares are fee owners of their interests, which is the right to use their units

---

1. There are a total of forty-four condominium units in the Kimball development. Sixteen of those units were unimproved at the time of the valuations and are not included in this review.

for one week per year.[2] The sum of the sale prices of the fifty timeshares in each unit was substantially higher than the value of any unit sold as a traditional condominium unit. Marketing a timeshare development is substantially more expensive because each timeshare is sold separately. In effect, each condominium unit must be sold fifty times rather than once. The market for urban timeshare condominiums in the Salt Lake City area apparently is quite limited.[3]

There are three basic approaches to valuing condominium developments that are marketed as timeshares. Each approach is based on a different perspective as to how the value of the property should be determined.[4] If the value of the condominium property is defined by the individual property interests of each of the multiple owners of timeshares, then the property value of a condominium unit is the sum of the timeshare interests in the condominium unit. We refer to this as the *timeshare-based* approach. If the value of the condominium is defined by the value of the physical aspects of the condominium unit, then the condominium's value is the market value of the unit without reference to the number of the timeshare owners in the unit. We refer to this as the *unit-based* approach. If the nature of the property is defined by reference to the condominium development as a whole including all the condominium units, then the value of a unit is measured as a fraction of the market value of the whole development without reference to the individual values of either the timeshares or the units. We refer to this as the *development-based* approach. In this case, Kimball contends that the unit-based approach is the correct method for valuation, while the Tax Commission and the Assessor assert that a modified timeshare-based approach is the correct valuation method.

The dispute in this case arose because the Salt Lake County Assessor valued the Association's units for the years 1990 through 1992 according to a timeshare-based approach. Specifically, the Assessor calculated the sum of the prices paid for the fifty timeshares per unit and then deducted a fixed percentage—in this case 30%—to account for the marketing costs of selling timeshares.[5] With respect to the 1990 valuation, the Association appealed the Salt Lake County Assessor's market-value assessments of its timeshare condominiums to the Salt Lake County Board of Equalization, and the Board reduced the Assessor's valuation. The Board rejected the Assessor's timeshare-based approach to valuation and employed a unit-based method.[6] With respect to the 1991 and 1992 assessments, however, the Board valued the Kimball units according to the modified timeshare-based formula employed by the Assessor, which resulted in substantially higher valuations.

The Assessor appealed the Board's 1990 decision to the Tax Commission, and the Association appealed the 1991 and 1992 deci-

---

2. Buyers do not obtain a specific period during the year. Rather, year by year the various purchasers arrange to reserve their time. Two weeks out of each year are left unreserved for the purpose of doing routine maintenance.

3. Kimball's was the only urban timeshare development in Salt Lake County at the time this case was presented to the Tax Commission.

4. Obviously, individual variations applied to each approach can modify the ultimate value achieved. Nevertheless, because each approach entails a substantially different perspective on calculation of value, the choice of approach generally is the most significant aspect of the valuation process.

5. The condominium units also qualified for other deductions that are provided for by statute and are not at issue in this case.

6. After the Board issued its initial decision rejecting the Assessor's formula, the Assessor requested a reconsideration of the decision, and the Board reaffirmed its original decision. The Association complains that the Assessor had no right to request reconsideration and that the Assessor's appeal from the final decision to the Tax Commission, even if statutorily permissible, was untimely. The Commission found that the Assessor's request for reconsideration and the Board's decision to reconsider were proper. We find no merit in the Association's argument that the Board may not reconsider its decisions at the request of one of the parties if proper notice is given. The Commission also found that the Board issued its final decision on the 1990 taxes on February 28, 1991, and that the Assessor appealed on March 22, 1991. Because the appeal was taken within the thirty-day period allowed, the Commission correctly ruled that the appeal was timely.

sions. The Association objected to the Assessor's appeal on the ground that the Assessor had no statutory authorization to appeal the decision of the Board. The Commission rejected the Association's claim that the Assessor had no right to appeal and consolidated the appeals for all three years. The parties asserted different interpretations of Utah Code Ann. § 57–8–27(4) in support of their positions. The Board and the Assessor argued that the statute mandates a timeshare-based valuation approach, whereas the Association construed the statute to mandate a unit-based valuation. With respect to the four different types of units in Kimball's development, the Association offered testimony from an appraiser who valued them at $27,000 for a studio unit, $33,500 for one-bedroom units, $38,000 for one-bedroom suites, and $50,000 for two-bedroom units. These appraisals disregarded the timeshare use of the units and were calculated according to the estimated market value of comparable ordinary condominium units. The Association's appraiser found that the values for all units remained unchanged during the three years under consideration. The County presented testimony that set the 1990 values at $23,307 for a studio unit, $43,236 for one-bedroom units, $78,120 for one-bedroom suites, and $90,895 for two-bedroom units. The County's appraiser presented slightly higher valuations for the years 1991 and 1992.[7] These valuations were based on the actual net proceeds of the fifty timeshares sold per unit, minus marketing and maintenance costs at a rate discounted for the risk associated with timeshare development. The Commission found that both appraisals were "reasonable and without substantial challenge if the assumption is correct [as to] the proper method of valuing condominium units."

In addressing the issue of valuation, the Commission disagreed with the Association that section 57–8–27(4) proscribes a timeshare-based valuation method. It also ruled that Kimball's unit-based method produced a value that was less than the full fair-market value of its condominium units and thus violated article XIII, section 2 of the Utah

Constitution. Consequently, the Commission ruled that the Association's condominium units were to be valued according to the timeshare-based method that the Salt Lake County Assessor and Board of Equalization had propounded.

The Salt Lake County Board of Equalization, the Salt Lake County Assessor, and the Utah State Tax Commission are denominated as respondents on this review. Except when their separate identities are germane to the point under discussion, we refer to the Assessor and the Board of Equalization collectively as representatives of Salt Lake County.

## II. STANDARD OF REVIEW

The issues presented to this Court raise questions of law which we review for correctness, granting no deference to the Commission on its rulings of statutory and constitutional interpretation. *Corporation of the Episcopal Church v. State Tax Comm'n*, 919 P.2d 556, 558 (Utah 1996).

## III. THE COUNTY ASSESSOR'S AUTHORITY TO APPEAL BOARD OF EQUALIZATION DECISIONS TO THE TAX COMMISSION

■ The Salt Lake County Assessor took an appeal from the Board of Equalization's decision with respect to the 1990 valuation. The Association asserts that county assessors have no statutory authority to appeal the decisions of boards of equalization and, therefore, the Assessor's appeal of the 1990 assessment was void. The Tax Commission analyzed the issue in some detail and ruled that the Assessor did have standing to appeal the decision of the Board. The Association's argument on this issue is based upon two provisions of the Property Tax Act. Section 59–2–1004 deals with the right of a *taxpayer* to appeal to the county board of equalization from either the "valuation or the equalization of the taxpayer's real property," as fixed by the assessor. Utah Code Ann. § 59–2–1004(1)(a). Subsection (4) provides that "any taxpayer" who is dissatisfied with the deci-

7. For 1991, the County appraised the units respectively at $24,050, $44,230, $79,234, and $92,101; and for 1992, $24,864, $45,318, $80,-455, and $93,421.

sion of the Board may file an appeal with the Commission as prescribed in section 59–2–1006.

Section 59–2–1005 is a parallel provision to section 59–2–1004 and deals with the assessment of personal property Section –1005, like its counterpart –1004, provides that any taxpayer dissatisfied with the county's decision "may file an appeal with the Commission as established in Section 59–2–1006."

Section 59–2–1006 specifies who may appeal a decision of a county board of equalization to the Tax Commission, when the appeal must be taken, and various other details of the appeal process. Section –1006 provides standing to persons other than taxpayers to file an appeal with the Tax Commission. The critical language is found in subsection –1006(1):

> Any person dissatisfied with the decision of the County Board of Equalization concerning the assessment and equalization of any property, or the determination of any exemption in which the person has an interest, may appeal that decision to the Commission by filing a notice of appeal specifying the grounds for the appeal....

The language in subsection –1006(1) that "any person dissatisfied with the decision of the County Board of Equalization" is broader than the phrase "taxpayer [who] is dissatisfied with the decision of the Board," which is the operative phrase in sections –1004 and –1005.[8]

The Association argues that the word "interest" in the restrictive clause "or the determination of any exemption in which the person has an interest" in subsection –1006(1) requires that "any person dissatisfied with the decision of the County Board" must also have an interest in the property that is subject to assessment and equalization or an interest in property for which an exemption is claimed. However, the logical way to read the term "interest" in light of the grammatical structure of subsection –1006(1) is that it applies only to a decision of the Board with respect to "any exemption in which the person has an interest" but not to "any person

dissatisfied with the decision of the County Board of Equalization concerning the assessment and equalization of any property." Hence, the language of section –1006 granting a right of appeal to any dissatisfied person is broad enough to include county assessors.

In addition, the prior versions of section –1006 shed some light on legislative intent and the goal of broadening standing requirements. In 1931, the provision read as follows:

> Any person feeling himself aggrieved and being dissatisfied with the decision of the county board of equalization in relation to the assessment of any property in which he has an interest, may appeal ... to the tax commission.

1931 Utah Laws ch. 53, § 1 (amending § 5981x, Compiled Laws of Utah, 1917). This version limited appeals to those having an interest in the property being assessed. A few minor grammatical changes were made in 1973, so as to read as follows:

> Any person aggrieved and dissatisfied with the decision of the county board of equalization in relating [sic] to the assessment of any property *or the determination of any exemption* in which he has an interest may appeal....

1973 Utah Laws ch. 141, § 7 (emphasis added). Apparently, this addition did not change the nature of the interest required for an appeal but merely added, as a matter of clarification, claims of exemption to the category of cases appealable.

Subsequently, the word "aggrieved" was deleted from the statute in 1988, and two commas were added in 1992 to bring the provision to its present form. The addition of the commas set the clause dealing with tax exemptions apart from the remainder of the provision so that one who attacks a property tax exemption must have an interest in the property for which an exemption is claimed to appeal but need not meet that requirement with respect to appeals of assessments. Clearly, county assessors fall within the stat-

---

**8.** In the latter section, the term "county legislative body" is used instead of "the Board," which is used in section –1004. With respect to the point under discussion, that difference is irrelevant.

utory term "any person dissatisfied," as that term is employed in subsection 59–2–1006(1). Even before the 1988 clarifying amendment, we referred to a county assessor's right of appeal in *Baker v. Tax Commission,* 520 P.2d 203, 206 (Utah 1974), when we stated: "The Commission thus has the power to ... make such an order as it deems proper. If it errs in making the order, then, of course, the assessor or any other aggrieved person may have this court review the error."

Finally, we note that if the assessor had no right of appeal from board of equalization decisions, many decisions would be insulated from review altogether. Certainly, taxpayers who successfully contest an assessment would have no reason to appeal, if a board of equalization erred in construing constitutional or statutory provisions in the a taxpayer's favor. In that case, the decision would stand because there would be no one who both would and could appeal. Consequently, the constitutional requirements that assessments be both uniform and represent fair-market value would be undermined.

In short, we hold that the Tax Commission properly allowed the Salt Lake County Assessor to file an appeal under Utah Code Ann. § 59–2–1006. We now address the Tax Commission's decisions respecting the assessments on the Association's units for all three years (1990, 1991, and 1992) on the merits.

## IV. VALUATION OF TIMESHARES UNDER THE CONDOMINIUM OWNERSHIP ACT

The Condominium Ownership Act, Utah Code Ann. § 57–8–1 to –36, enacted in 1963, provides for the separate assessment and taxation of wholly owned condominium units. Utah Code Ann. § 57–8–27(1) provides that "each unit and its percentage of undivided interest in the common areas and facilities shall be deemed to be a parcel and shall be subject to separate assessment and taxation by each assessing unit and special district." This provision establishes that each condominium unit within a larger multi-unit development is a separate tax parcel that is to be given its own value and assessment, and a separate tax notice is sent. One purpose of

this provision was to make clear that a condominium owner would not be affected by the tax delinquency of his neighbor. Representative Castler, speaking in support of the Condominium Ownership Act, stated:

> If you were to own a condominium unit that was part of a larger unit, you would want to make sure that if your neighbor defaulted in his taxes on his unit that that liability would not possibly accrue to you.

Utah House of Representatives, 35th Leg., disk 94, side 1 (February 15, 1963).

In 1986, the Legislature added subsection (4), the provision at issue here, to Utah Code Ann. § 57–8–27 to deal with timeshare estates, a property concept that was emerging as an administrative problem for county assessors in the assessment and collection of taxes. Speaking to the effect that subsection (4) would have, Senator Hillyard stated that it

> creates what is called the timeshare estate so that the people who own timeshares don't have to be sent separate tax notices but can go [to] the entity itself. It's a needed bill and especially those areas where there's timeshare units set up so they can handle the recording and the tax rolls in that area.

Utah Senate, debate on H.B. 216, 46th Leg., day 45, disk 111, side 2 (February 26, 1986).

The purpose of subsection (4) of section 57–8–27 was to provide a different treatment for timeshare condominiums than for wholly owned condominiums for taxation purposes. Under subsection (4), individual timeshare interests in a condominium unit are not considered separate tax parcels for taxation purposes and each timeshare owner does not receive a separate notice of taxation. Instead, the assessing entity assigns one value to the whole condominium unit, makes one assessment, and sends one tax notice to the "management committee" of the condominium development. At the same time that the Legislature added subsection (4) to section 57–8–27, it also amended Utah Code Ann. § 57–8–10(7) to add the following words: "The declaration shall also put timeshare owners on notice that tax notices will be sent to the management committee, not each

timeshare owner." 1986 Utah Laws 237, ch. 92, § 3.

The specific issue in the instant case concerns the valuation of timeshare condominiums under section 57-8-27(4). The Tax Commission held that the Salt Lake County Assessor did not err in valuing timeshare condominiums differently from wholly owned condominiums. The Association contests the Tax Commission's construction of subsection (4) of section 57-8-27 and maintains that a timeshare condominium should be assessed in exactly the same manner as wholly owned condominiums.

Subsection (4) of section 57-8-27 of the Condominium Ownership Act states:

> *Timeshare interests and timeshare estates,* as defined in Subsection 57-19-2(17), *may not be separately taxed but shall be valued, assessed, and taxed at the unit level.* Notice of assessment, delinquency, sale, or any other purpose required by law is considered sufficient for all purposes if the notice is given to the management committee.

(Emphasis added.)

 When construing a statute, we look first to the plain meaning of the words used and their statutory context. *CIG Exploration, Inc. v. Utah State Tax Comm'n*, 897 P.2d 1214, 1216 (Utah 1995). The plain language rule also requires that we give effect to all the terms of a statute so that no one provision is construed in isolation. *See Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112 (Utah 1991). Furthermore, " '[i]f doubt or uncertainty exists as to the meaning or application of an act's provisions, the Court should analyze the act in its entirety and harmonize its provisions in accordance with the legislative intent and purpose.' " *CIG Exploration*, 897 P.2d at 1216 (quoting *Beynon v. St. George-Dixie Lodge*, 854 P.2d 513, 518 (Utah 1993)).

 The parties dispute the meaning of the language in subsection (4) that "[t]imeshare interests and timeshare estates may not be separately taxed but shall be valued, assessed, and taxed at the unit level." That language does *not* state that timeshare interests and timeshare estates may not be valued at all, as the Association contends; rather, it states that they may not be *"separately taxed."* Thus, timeshare interests and estates are not to be taxed separately at the timeshare level. The second part of the first sentence makes clear that timeshare interests and timeshare estates *shall be valued, assessed,* and taxed "at the unit level," that is, at the condominium unit level. The Association is correct that the statute distinguishes between the unit level and the timeshare level, but its conclusion that "the only logical interpretation is that the unit is to be valued, assessed and taxed without reference to the timeshare interests" is a non sequitur. In other words, the Association argues that the increased value a condominium has by virtue of its subdivision into timeshare interests or estates must be ignored. The Association simply ignores the language that timeshare interests and estates are items to be valued and assessed. Far from requiring the assessor to ignore the value of timeshare interests, the statute in fact requires it.

Indeed, ignoring the value of timeshare interests for taxation purposes would raise serious problems under article XIII, sections 2(1) and 3(1) of the Utah Constitution, which require that all tangible property be taxed at a uniform and equal role in proportion to its market value. The County's method of taxing timeshare interests and estates that the Commission sustained is consistent with both the statutory language and the requirements of article XIII, sections 2(1) and 3(1). In addition, it serves the important administrative purpose of simplifying and streamlining the machinery for taxing timeshare interests and estates.

We therefore affirm the Commission's decision. The Association's condominiums were correctly valued according to the Condominium Ownership Act.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur in Associate Chief Justice STEWART's opinion.