248 P.3d 465 (2011)
2011 UT 10
Brian Brent OLSEN, Plaintiff and Appellee,
v.
EAGLE MOUNTAIN CITY, Defendant and Appellant.
No. 20090831.
Supreme Court of Utah.
February 18, 2011.
*467 M. David Eckersley, Salt Lake City, for plaintiff.
Gerald H. Kinghorn, Catherine L. Brabson, Salt Lake City, for defendant.
Justice LEE, opinion of the Court:
¶ 1 In this interlocutory appeal, Defendant Eagle Mountain City asks us to reverse the district court's denial of its motion to dismiss an action filed by the City's former mayor, Brian Brent Olsen. The City's motion challenged Olsen's eligibility for reimbursement of attorney fees incurred in defending a criminal action arising out of Olsen's duties as mayor, asserting that the applicable statute conditions eligibility for reimbursement on timely submission of a request that the government employer defend the employee in the underlying suit (a request that Olsen concededly failed to submit). We find no such requirement in the statute and accordingly affirm.

I
¶ 2 Brian Brent Olsen was elected mayor of Eagle Mountain in the November 2005 election. On October 23, 2006, the Utah County Attorney charged Olsen with seven counts of misusing public funds while serving as mayor in violation of Utah Code section 76-8-402. Olsen resigned as mayor just prior to the announcement of the charges. On September 25, 2008, after a four-day trial, a jury found Olsen not guilty on all seven counts.
¶ 3 Olsen employed private counsel in his successful defense. Thirty-four days after acquittal, on October 29, 2008, Olsen submitted to Eagle Mountain a request for reimbursement of $119,834.90 in attorney fees and costs. Eagle Mountain did not respond, and on February 4, 2009, Olsen filed a complaint in the Fourth District Court seeking reimbursement.
¶ 4 Eagle Mountain moved to dismiss Olsen's complaint, arguing that Olsen failed to submit a timely request that Eagle Mountain defend him at trial as required, according to Eagle Mountain, by Utah Code section 63G-7-902. The district court denied the motion.
¶ 5 Eagle Mountain filed an interlocutory appeal in this court, which we granted on December 8, 2009. "We review the district court's denial of [Eagle Mountain's] motion to dismiss for correctness, granting no deference to the district court's ruling." Pendleton v. Utah State Bar, 2000 UT 96, ¶ 5, 16 P.3d 1230.

II
¶ 6 The statutory scheme at issue here involves three separate provisions: (1) Utah Code section 52-6-201(1) (2010) (the "Reimbursement Statute"); (2) Utah Code section 52-6-202(1) (2010) ("Section 202"); and (3) Utah Code section 63G-7-902 (2008) ("Section 902"). The Reimbursement Statute provides for reimbursement of fees and costs as follows:
If a state grand jury indicts, or if an information is filed against, an officer or employee, in connection with or arising out of any act or omission of that officer or employee during the performance of the *468 officer or employee's duties, within the scope of the officer or employee's employment, or under color of the officer or employee's authority, and that indictment or information is quashed or dismissed or results in a judgment of acquittal . . . that officer or employee shall be entitled to recover reasonable attorney fees and court costs necessarily incurred in the defense of that indictment or information from the public entity. . . .
UTAH CODE ANN. § 52-6-201(1). Section 202, in turn, links the Reimbursement Statute with Section 902, providing that "[a] request for reimbursement of attorney fees and court costs shall be filed in the manner provided in Sections 63G-7-902 and 63G-7-903."[1]Id. § 52-6-202(1) (emphasis added).
¶ 7 Finally, Section 902 sets forth standards and procedures for a governmental entity's defense of an action against its employee:
(1) Except as provided in Subsections (2) and (3), a governmental entity shall defend any action brought against its employee arising from an act or omission occurring:
(a) during the performance of the employee's duties;
(b) within the scope of the employee's employment; or
(c) under color of authority.
(2)
(a) Before a governmental entity may defend its employee against a claim, the employee shall make a written request to the governmental entity to defend the employee:
(i) within ten days after service of process upon the employee; or
(ii) within a longer period that would not prejudice the governmental entity in maintaining a defense on the employee's behalf; or
(iii) within a period that would not conflict with notice requirements imposed on the entity in connection with insurance carried by the entity relating to the risk involved.
(b) If the employee fails to make a request, or fails to reasonably cooperate in the defense, including the making of an offer of judgment under Rule 68, Utah Rules of Civil Procedure, Offers of Judgment, the governmental entity need not defend or continue to defend the employee, nor pay any judgment, compromise, or settlement against the employee in respect to the claim.
Id. § 63G-7-902.
¶ 8 The question in this case concerns the "manner" prescribed in Section 202 for reimbursement of attorney fees and costs under the Reimbursement Statute. Eagle Mountain insists that Olsen was ineligible for reimbursement because he failed to submit a timely request that the City defend him under the terms of Section 902. We disagree. The City's construction is incompatible with the language and structure of the statutory reimbursement scheme. Despite Eagle Mountain's argument to the contrary, we also find no basis in the statute for ascribing to the legislature an intent to involve governmental entities in the selection of criminal defense counsel by their employees or in controlling defense costs during the course of the underlying criminal proceeding.

A
¶ 9 We have repeatedly affirmed our commitment to interpreting statutes according to the "plain" meaning of their text. *469 See, e.g., Blackner v. State Dep't of Transp., 2002 UT 44, ¶ 12, 48 P.3d 949. This principle is simple to articulate in the abstract, but often difficult to apply in contested cases where both sides offer conceivable constructions of the language in question.[2] In such cases, the statutory text may not be "plain" when read in isolation, but may become so in light of its linguistic, structural, and statutory context. See Kimball Condos. Owners Ass'n v. Cnty. Bd. of Equalization, 943 P.2d 642, 648 (Utah 1997). Thus, when the words of a statute consist of "common, daily, nontechnical speech," they are construed in accordance with the ordinary meaning such words would have to a reasonable person familiar with the usage and context of the language in question. O'Dea v. Olea, 2009 UT 46, ¶ 32, 217 P.3d 704 (internal quotation marks omitted).[3]
¶ 10 Eagle Mountain and Olsen both defend their positions as compelled by the plain meaning of the text of the statutory scheme. For its part, Eagle Mountain contends that a request for reimbursement "in the manner provided" in Section 902 must conform to the timing requirements of Section 902. Since Section 902 requires a "written request . . . within ten days after service of process upon the employee," and because Olsen failed to submit his request within that time frame, Eagle Mountain insists that Olsen forfeited his right to reimbursement by failing to assert a timely claim.
¶ 11 Olsen interprets the "manner" incorporated into the Reimbursement Statute through Section 202 more narrowly. The manner required for reimbursement requests, in Olsen's view, is limited to the form (but not the timing) set forth in Section 902. Since the form prescribed by Section 902 is simply a "written request to the governmental entity," and because there is no dispute that Olsen submitted a written request to Eagle Mountain, Olsen argues that his request was proper and that the district court was right to deny the City's motion to dismiss.
¶ 12 If we read the term "manner" in isolation, both parties' constructions might be defensible. Common dictionary definitions of the term "manner"[4] arguably could encompass just the form of an employee's written request, as suggested by Olsen, in that the mode or method of requesting reimbursement is by submission of a written request. On the other hand, the mode or method of submitting such a request could be construed, in accordance with the City's position, to encompass the timing requirements set forth in the statute. But we do not interpret the "plain meaning" of a statutory term in isolation. Our task, instead, is to determine *470 the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme).[5]
¶ 13 The fact that the statutory language may be susceptible of multiple meanings does not render it ambiguous; "all but one of the meanings is ordinarily eliminated by context." Deal v. United States, 508 U.S. 129, 131-32, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993). In this case, we conclude that Eagle Mountain's construction is eliminated by the context of the Reimbursement Statute. We instead adopt Olsen's interpretation as the way that the language in question would be understood by a reasonable person familiar with the usage and context of the statute.
¶ 14 First, the timing provision of Section 902 expressly contemplates an underlying civil action and thus suggests its inapplicability to a criminal reimbursement proceeding. The requirement to submit a request "within ten days" is triggered by "service of process upon the employee," a procedural mechanism that is required in civil proceedings, see UTAH R. CIV. P. 4, but is unknown to the criminal law. Olsen never received "service of process" in connection with the criminal action against him, and thus by its literal terms Section 902's timing requirement arguably was never implicated as to Olsen. It is true, as the City notes, that Olsen did receive notice of the criminal information. The statute does not speak of "notice," however, but of "service of process," and that language uniquely applies in civil proceedings and thus supports Olsen's view that the timing provision does not extend to reimbursement requests for fees incurred in criminal actions.
¶ 15 Section 902's timing requirement is also set forth in the specific context of a "governmental entity . . . defend[ing] its employee against a claim," UTAH CODE ANN. § 63G-7-902(2)(a) (emphasis added), which is defined by statute as an "asserted demand for or cause of action for money or damages," id. § 63G-7-102(1) (2008). The criminal information filed against Olsen did not assert a "claim" in this sense, so again there is contextual reason to conclude that the timing provision of Section 902 does not apply to Olsen's request for reimbursement. This conclusion is strengthened by the fact that Section 902's timing provision is expressly connected to a request that a governmental entity "defend" an employee, a right that is provided in civil cases under Section 902(1), but not in criminal actions. Where the government employee is subjected to criminal charges, his right is merely to reimbursement of fees and costs, not to a defense provided by the government employer. See id. § 52-6-201(1). This further indicates that Section 902's timing provisionwhich is associated with a request made "[b]efore a governmental entity may defend its employee against a claim," id. § 63G-7-902(2)(a)applies to civil cases (where a request to defend is viable) and not to criminal cases (where a request to defend would be legally baseless and where reimbursement is the only remedy).
¶ 16 Put differently, the City's position that the "manner" required for reimbursement requests under Section 202 encompasses the entirety of Section 902 is untenable. At least part of Section 902 is plainly incompatible with the Reimbursement Statute's reimbursement scheme, which clearly does not encompass a duty that a "governmental entity shall defend" a criminal action against its employee. Id. § 63G-7-902(1). Since that *471 provision is not part of the "manner" incorporated into the Reimbursement Statute, we likewise conclude that the timing provisionwhich is expressly connected to an employee's request that the employer comply with its statutory duty to defendis inapplicable.
¶ 17 The City's argument is also undermined by the express terms of Utah Code section 63G-7-903 (2008) ("Section 903"). Like Section 902, Section 903 is incorporated by the express terms of Section 202. Section 903, however, is also incompatible with the standards for reimbursement set forth in the Reimbursement Statute, and thus we cannot read Section 202's incorporation of Section 903 literally without defeating the plain language of the Reimbursement Statute.
¶ 18 By its terms, Section 903(1) has no application to requests for reimbursement of fees in criminal proceedings, since that provision applies only if an employee "pays a judgment" the government was required to pay under Utah Code section 63G-7-902. As for Section 903(2), Olsen was neither entitled nor required to request a defense in order to qualify for reimbursement under the Reimbursement Statute, so that provision similarly does not apply. In fact, Section 903(2) confirms that it cannot extend to requests for reimbursement of fees in criminal proceedings, in that it provides conditions for reimbursement of feesthat "none of the conditions set forth in Subsection 63G-7-202(3)(c) appl[y]," id. § 63G-7-903(2)(b)that are inconsistent with the standards for reimbursement in the Reimbursement Statute. Compare id. § 52-6-201(1) (providing for reimbursement upon dismissal of information or "judgment of acquittal"), with id. § 63G-7-202(3)(c) (excluding claims arising out of employee's acts involving "willful misconduct," driving under the influence of alcohol, false testimony, fabricated evidence, or failure to disclose testimony). The Reimbursement Statute leaves no room for this court to add conditions to the right of reimbursement that are not set forth expressly by legislation. See Berrett v. Purser & Edwards, 876 P.2d 367, 370 (Utah 1994) ("[C]ourts are not to infer substantive terms into the text that are not already there."). The City's construction of Section 202which would hold that everything in Sections 902 and 903 is incorporated by reference as part of the "manner" required for requests for reimbursement of fees and costs in defense of criminal actionscannot be accepted without running afoul of this principle and without undercutting the express language of the Reimbursement Statute. We accordingly reject that approach and find that Olsen's construction is more consistent with the language and structure of the statutory scheme.
¶ 19 The City insists that a refusal to incorporate the entirety of Sections 902 and 903 "fails to render all parts [of the statutory scheme] relevant and meaningful" and "render[s] portions" of it "superfluous or inoperative." Hall v. Utah State Dep't of Corr., 2001 UT 34, ¶ 15, 24 P.3d 958 (internal quotation marks omitted). We acknowledge the canon of construction cited by Eagle Mountain, which dictates that "`effect must be given, if possible,'" to the entire text of a statute and thus prefers a construction that "`will give force to and preserve all the words of the statute.'" State v. Maestas, 2002 UT 123, ¶ 53, 63 P.3d 621 (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:06 (4th ed.1984)). Canons of construction, however, are not formulaic, dispositive indicators of statutory meaning. They are merely tools that guide our construction of statutes in accordance with common, ordinary usage and understanding of languagein this instance, the expectation that legislators typically use language advisedly and tend not to speak in superfluous terms. Such tools must be understood as one of several contextual indicators of statutory meaning, which in this case encompass not just the aforementioned canon but also the notion of interpreting statutory text in light of surrounding language and the structure of the statutory scheme.
¶ 20 For the reasons noted above, we find that "the manner" required for requests under the Reimbursement Statute encompasses only the requirement of a written request. To interpret the statute more broadly to encompass the timing provision of Section 902 (and the procedures in Section 903) would preserve independent meaning for the legislature's reference to these statutory *472 provisions, but it would also do substantial violence to the text and structure of the overall reimbursement scheme (and of the Reimbursement Statute in particular). Ultimately, then, this is a case where no interpretation preserves reasonable meaning for all provisions of the statutory scheme, as the City's approach would require us to find a request and a duty to defend in circumstances that are plainly incompatible with the Reimbursement Statute. We accordingly adopt Olsen's construction of the statute as more consistent with the statutory language as it would be understood in its relevant context.

B
¶ 21 Eagle Mountain challenges this construction of the Reimbursement Statute as inconsistent with our decision in Hulbert v. State, 607 P.2d 1217 (Utah 1980). In that case, we interpreted a predecessor to the current Section 202, which prescribed filing a reimbursement request "`in the manner provided in the Utah Governmental Immunity Act.'" Id. at 1219 (quoting UTAH CODE ANN. § 63-30a-3 (1977)). In the course of rejecting the State's argument that only one provision of the entire Governmental Immunity Act applied to Hulbert's claim, we noted that "it would have been a simple matter to designate the section number of the Governmental Immunity Act and stipulate [that] those provisions solely were to" provide the "manner" for requesting reimbursement of attorney fees and costs. Id. Since the current Section 202 does designate specific statutory "section number[s]" that apply to requests for reimbursement, Eagle Mountain insists that we are bound to conclude that the legislature intended to incorporate the designated sections (902 and 903) in their entirety. Moreover, Eagle Mountain attributes to the legislature a specific intent to provide the governmental entity with the opportunity to have a role at the inception of the criminal processa role that could allow the government employer to arrange for defense counsel if it so chose and/or to help control the costs of litigation.
¶ 22 Our textual analysis of the Reimbursement Statute forecloses the need for a parsing of the legislative history in search of legislative intent. Nelson v. Salt Lake Cnty., 905 P.2d 872, 875 (Utah 1995) ("Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations." (internal quotation marks omitted)). In any event, the intent that Eagle Mountain would ascribe to the legislature is nowhere expressed in the language or history of the Utah reimbursement scheme. The statute itself certainly does not provide for involvement of the governmental entity at the inception of the criminal proceedings. To the contrary, the Reimbursement Statute contemplates only a right "to recover reasonable attorney fees and court costs"a right that vests only after the "indictment or information is quashed or dismissed or results in a judgment of acquittal." UTAH CODE ANN. § 52-6-201(1). If the legislature had intended to give the government the right to participate in the defense or to have a role that would allow it to control litigation costs, surely the legislature would have said so in the text of the Reimbursement Statute. The fact that instead the relevant statute provides for reimbursement of "reasonable attorney fees" suggests that the government's involvement in the process is not at the inception of the criminal proceedings, as the City suggests, but after dismissal or acquittal, at which point the government can control its litigation costs by insisting that the court limit the employee's fees to what is "reasonable."
¶ 23 Eagle Mountain fails to identify any committee report or floor debate that would provide any insight into the meaning of the term "manner" in its statutory context. Instead, the City speculates as to the legislature's possible intent in requiring a request for reimbursement to be made in accordance with the timing requirements of Sections 902 and 903. Yet Olsen identifies an alternative (and entirely plausible) explanation of the legislature's intent in incorporating the "manner" set forth in Sections 902 and 903 into the Reimbursement Statute: to give the governmental entity notice of an acquitted defendant's reimbursement claim to allow for investigation and possible resolution of the claim without the need for litigation. Because Olsen's position is more consistent with the statutory language and structure, we decline *473 the City's request that we attribute a contrary intent to the legislature.[6] It is true, as the City indicates, that the statute in question (unlike the one in Hulbert) designates specific statutory section numbers as setting forth "the manner" in which reimbursement requests are to be submitted, but we are still left with the question of which provisions of those sections dictate the manner of submitting a reimbursement request and which provisions apply only to a request for defense in a civil proceeding. Under the circumstances, the timing requirements of Section 902 cannot extend naturally or reasonably to a request for reimbursement in light of the text and structure of the statute, and the City's speculation as to a contrary legislative purpose cannot quash our construction of the plain language.

III
¶ 24 We hold that the "manner" required for a request for reimbursement of fees and costs under the Reimbursement Statute is simply a "written request to the governmental entity" as set forth in Section 902. The timing provision of Section 902 applies only to requests to defend against a civil claim and does not extend to requests for reimbursement of fees and costs incurred in a criminal action. For such requests (like Olsen's), the time limit for filing is provided elsewhere, in the three-year statute of limitations in Utah Code section 78B-2-305(4) (Supp.2010). Olsen filed his request for reimbursement after his acquittal in the manner required by Section 202. We thus affirm the district court's denial of the City's motion to dismiss.
¶ 25 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice LEE'S opinion.
NOTES
[1] Utah Code section 63G-7-903 provides:

(1) Subject to Subsection (2), if an employee pays a judgment entered against him, or any portion of it, that the governmental entity is required to pay under Section 63G-7-902, the employee may recover from the governmental entity the amount of the payment and the reasonable costs incurred in the employee's defense.
(2)
(a) If a governmental entity does not conduct the defense of an employee against a claim, or conducts the defense under a reservation of rights as provided in Subsection 63G-7-902(6), the employee may recover from the governmental entity under Subsection (1) if the employee can prove that none of the conditions set forth in Subsection 63G-7-202(3)(c) applied.
(b) The employee has the burden of proof that none of the conditions set forth in Subsection 63G-7-202(3)(c) applied.
[2] Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 COLUM. L. REV. 527, 527-28 (1947) ("When we talk of statutory construction we have in mind cases in which there is a fair contest between two readings, neither of which comes without respectable title deeds. A problem in statutory construction can seriously bother courts only when there is a contest between probabilities of meaning."); see also Frank H. Easterbrook, The Role of Original Intent in Statutory Construction, 11 HARV. J.L. & PUB. POL'Y 59, 60 (1988) ("People spend the money to come to court only when it is possible to draw conflicting inferences from the words alone.").
[3] See also id. (in the absence of contrary intent, nontechnical words are "given the meaning which they have for laymen in . . . daily usage" (internal quotation marks omitted)); Diversified Holdings, L.C. v. Turner, 2002 UT 129, ¶ 42, 63 P.3d 686 (statutes are construed in accordance with the "ordinary meaning of the words used" (internal quotation marks omitted)); NLRB v. Federbush Co., 121 F.2d 954, 957 (2d Cir.1941) (L. Hand, J.) ("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used, of which the relation between the speaker and the hearer is perhaps the most important part." (quoted in part in King v. St. Vincent's Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991))); Oliver Wendell Holmes, The Theory of Legal Interpretation, 12 HARV. L.REV. 417, 417-18 (1899) ("[W]e ask, not what this man meant, but what those words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used. . . .").
[4] See Hulbert v. State, 607 P.2d 1217, 1219 (Utah 1980) (interpreting a predecessor to Section 202 and defining "manner" as "`the mode or method in which something is done or happens: a mode of procedure or way of acting.'" (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1376 (1961))); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 795 (2d ed.1981) (defining "manner" as a way of doing something or the "way in which a thing is done or happens").
[5] See King, 502 U.S. at 221, 112 S.Ct. 570 ("[T]he meaning of statutory language, plain or not, depends on context."); Anderson v. Bell, 2010 UT 47, ¶ 22, 234 P.3d 1147 (noting that a party's proposed interpretation of a statutory provision, although "plausible" when read in isolation, "loses its persuasive effect when we harmonize this subsection with the rest of" the statutory scheme at issue); Day v. Meek, 1999 UT 28, ¶ 16 n. 6, 976 P.2d 1202 ("[W]e cannot interpret the statute we are charged with construing without looking to the overall context of the statutory structure at issue."); Kimball Condos. Owners Ass'n, 943 P.2d at 648 ("When construing a statute, we look first to the plain meaning of the words used and their statutory context."); Bus. Aviation of S.D., Inc. v. Medivest, Inc., 882 P.2d 662, 665 (Utah 1994) ("[T]erms of a statute are to be interpreted as a comprehensive whole and not in a piecemeal fashion." (internal quotation marks omitted)); CP Nat'l Corp. v. Pub. Serv. Comm'n, 638 P.2d 519, 523 (Utah 1981) (words are to be determined in light of their association with surrounding words and phrases).
[6] The conflict in the intent attributed by the parties to the legislature illustrates the peril of interpreting statutes in accordance with presumed legislative purpose, particularly given that most statutes represent a compromise of purposes advanced by competing interest groups, not an unmitigated attempt to stamp out a particular evil. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 93-94, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) (noting this fact and explaining that the judiciary "must respect and give effect to these sorts of compromises").