2015 UT App 145

## THE UTAH COURT OF APPEALS

ELIZABETH CRAIG; BRADY HARPER; AND NU LITE SALES, LLC,
Plaintiffs and Appellants,
*v.*
PROVO CITY,
Defendant and Appellee.

Opinion
No. 20131074-CA
Filed June 4, 2015

Fourth District Court, Provo Department
The Honorable Steven L. Hansen
No. 130400857

Barnard N. Madsen, Mark D. Stubbs,
Matthew R. Howell, and Diana L. Hardy, Attorneys
for Appellants

Robert D. West, Gary D. Millward, and J. Brian
Jones, Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and STEPHEN L. ROTH concurred.

TOOMEY, Judge:

¶1 Elizabeth Craig, Brady Harper, and Nu Lite Sales, LLC (collectively, Appellants) challenge the district court's decision to dismiss their action against Provo City after concluding that Utah Code section 78B-2-111 (the Savings Statute) does not apply to claims brought under the Governmental Immunity Act of Utah (the UGIA). *See* Utah Code Ann. § 63G-7-101 (LexisNexis 2011). We reverse and remand for further proceedings.

BACKGROUND

¶2     Pursuant to the UGIA, Craig and Harper filed a notice of claim against Provo City on February 16, 2011, and Nu Lite Sales filed a similar notice on March 1, 2011. Appellants then filed a tort action in district court on April 13, 2012, against Provo City. This action was dismissed without prejudice on March 27, 2013, after the statute of limitations period had lapsed,[1] because Appellants failed to submit a statutorily required $300 bond at the time the action was filed.[2]

¶3     Appellants subsequently filed a second action with the appropriate bond on June 19, 2013, within the one-year statute of limitations provided by the Savings Statute. Provo City filed a motion to dismiss. After a non-evidentiary hearing, the district court entered a memorandum decision, concluding, "Claims against governmental parties are comprehensively governed by the [UGIA], which does not contain a savings provision. The Utah Savings Statute contained in Utah Code § 78B-2-111 does not refer to the [UGIA], nor does it apply in claims against governmental parties." Accordingly, on October 28, 2013, the court dismissed the second action with prejudice.

ISSUES AND STANDARD OF REVIEW

¶4     The issues on appeal are whether the district court erred when it concluded that the UGIA is so comprehensive that it

1. The applicable deadlines under the UGIA for filing their tort actions in district court were April 17, 2012, and April 30, 2012, respectively.

2. It is undisputed that the $300 bond was filed, but it is not clear from the record when it was filed. *See* Utah Code Ann. § 63G-7-601(2) (LexisNexis 2011) (requiring the plaintiff to file a $300 bond "[a]*t the time* the action is filed" (emphasis added)).

displaces the Savings Statute and that the Savings Statute does not apply to claims against the government. The application of a statute of limitations presents a question of law, which we review for correctness giving no deference to the district court. *See Peak Alarm Co. v. Werner*, 2013 UT 8, ¶ 7, 297 P.3d 592.

ANALYSIS

¶5     "When interpreting a statute, our goal is to give effect to the legislature's intent and purpose." *Francis v. State*, 2013 UT 65, ¶ 41, 321 P.3d 1089 (citation and internal quotation marks omitted). "To determine that intent, we look to the plain language of the statute, reading it as a whole and interpreting its provisions to ensure harmony with other provisions in the same chapter and related chapters." *R.P. v. K.S.W.*, 2014 UT App 38, ¶ 15, 320 P.3d 1084. "'In doing so, we seek to render all parts thereof relevant and meaningful, and we accordingly avoid interpretations that will render portions of a statute superfluous or inoperative.'" *Thorpe v. Washington City*, 2010 UT App 297, ¶ 18, 243 P.3d 500 (quoting *Hall v. Department of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958). Discerning the plain meaning of a term may start with the dictionary since it catalogues "a range of possible meanings that a statutory term may bear." *Hi-Country Prop. Rights Group v. Emmer*, 2013 UT 33, ¶ 19, 304 P.3d 851. But if the statutory language remains ambiguous, "we may resort to other indications of legislative intent, including legislative history and policy considerations." *LeBeau v. State*, 2014 UT 39, ¶ 26, 337 P.3d 254.

¶6     Title 78B, Chapter 2—the chapter governing statutes of limitation—provides that actions must be commenced within its specified periods, "except in specific cases where a different limitation is prescribed by statute." Utah Code Ann. § 78B-2-102 (LexisNexis 2012). And the UGIA specifies limitations periods for bringing a notice of claim and beginning actions against governmental entities. *See id.* §§ 63G-7-101(2)(b), -402, -403 (LexisNexis 2011); *see also Peak Alarm*, 2013 UT 8, ¶ 17. In

particular, it provides that claims against governmental entities are "barred unless notice of claim is filed . . . within one year after the claim arises." Utah Code Ann. § 63G-7-402. Then, "[i]f the claim is denied, a claimant may institute an action in the district court . . . . [and t]he claimant shall begin the action within one year after denial of the claim." *Id.* § 63G-7-403(2)(a), (b). Furthermore, although the UGIA does not contain its own savings provision, the Savings Statute, contained in Title 78B, provides one chance to bring a second action if the initial action is dismissed for any reason other than on the merits after the statute of limitations has lapsed. *See id.* § 78B-2-111 (LexisNexis 2012). This new action under the Savings Statute must be commenced "within one year" after the failure. *Id.* § 78B-2-111(1).

¶7     Provo City concedes that, if the Savings Statute applied, Appellants' second action would satisfy the Savings Statute's requirements: Appellants filed the first action in a timely fashion, the court dismissed it for reasons other than on the merits, and Appellants filed a second action within one year of the first action's dismissal. *See Ewing v. Department of Transp.*, 2010 UT App 158, ¶ 7, 235 P.3d 776. Nevertheless, relying on *Peak Alarm Co. v. Werner*, 2013 UT 8, 297 P.3d 592, Provo City argues that the Savings Statute does not apply in this case because the UGIA's scheme displaces all parts of Title 78B, including the Savings Statute.

¶8     In *Peak Alarm*, a case that involved false-arrest and defamation claims against a municipality and several individuals, the Utah Supreme Court considered "the interaction between the UGIA's procedural scheme and those statutes of limitations [in Title 78B] that apply to suits against private actors," and broadly held that "[c]laims against governmental parties are comprehensively governed by the UGIA." *Id.* ¶¶ 21, 27 n.4. The court's analysis was confined to whether the UGIA's statute of limitations displaced the general limitations period set forth in Utah Code section 78B-2-302(4) for filing defamation and false-imprisonment actions. *Id.* ¶¶ 22–27. It determined that the

UGIA's requirements for filing a notice of claim and beginning an action in district court displace the more general statute of limitations in Utah Code section 78B-2-302(4) because the limitation prescribed by the UGIA "functions in all respects as a different limitation . . . prescribed by statute." *Id.* ¶ 23 (citation and internal quotation marks omitted). But the court did not consider whether a plaintiff may commence a new action where the initial action, filed within the UGIA's limitations period, is dismissed for reasons other than on the merits after the limitations period has lapsed. Accordingly, the issue in this case falls outside the scope of *Peak Alarm*'s holding, and we therefore further consider whether the legislature intended for the UGIA to displace the Savings Statute.

¶9     The UGIA states that it is the "single, comprehensive chapter" governing claims against governmental entities.[3] Provo City argues that the words "single" and "comprehensive" mean the UGIA is the exclusive statute pertaining to claims against governmental parties, in which case the Savings Statute is wholly inapplicable in the context of claims brought against the government. On the other hand, Appellants argue that "comprehensive" is not the equivalent of "exclusive" but instead "refers to the legislature's intent to consolidate, clarify, and simplify rather than expressly exclude other consistent statutory provisions within the Code." We find Appellants' argument persuasive.

---

3. Utah Code section 63G-7-101(2)(b) states, "This single, comprehensive chapter governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." In 2015, however, the legislature amended this statute by, among other things, omitting the phrase "This single, comprehensive chapter" from this subsection. *See* Governmental Immunity Act of Utah, ch. 342, § 2 (2015).

¶10    The word "comprehensive" is defined as "covering a matter under consideration completely or nearly completely" or "accounting for or comprehending all or virtually all pertinent considerations." *Webster's Third New Int'l Dictionary* 467 (1966). Although it could be all-inclusive, the ordinary meaning of the word "comprehensive" allows for something less than complete coverage. Furthermore, discerning the ordinary meaning of the UGIA's language does not confine us to such a hyper-literal meaning of each word. "[O]ur plain language analysis is not so limited that we only inquire into individual words and subsections in isolation; our interpretation of a statute requires that each part or section be construed in connection with every other part or section so as to produce a *harmonious whole*." *Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147 (citation and internal quotation marks omitted).

¶11    Construing the subsection addressing the UGIA's "comprehensive" nature in the narrow manner that Provo City suggests would render the statute inoperative. For example, although the UGIA contemplates the government's waiver of immunity from suit, it provides no cause of action. *See* Utah Code Ann. § 63G-7-202(1)(c) (LexisNexis 2011) ("No cause of action or basis of liability is created by any waiver of immunity in [the UGIA]."). Instead, a litigant must turn to other statutory provisions and common law to supply the causes of action for their claims against governmental entities. Likewise, if the statute were read as narrowly as Provo City urges, the rules of evidence would not apply, even in court proceedings, because the UGIA does not expressly prescribe their use. In circumstances such as the judicial review of informal administrative proceedings, in which the use of the Utah Rules of Evidence might not be assumed, the Utah Code explicitly calls for them. *See id.* § 63G-4-402(2), (3)(b). In contrast, for claims brought pursuant to the UGIA in district court proceedings, their use is presumed but not explicitly called for. *Compare id.* (prescribing the use of the Utah Rules of Civil Procedure and Rules of Evidence), *with id.* § 63G-7-601 (expressly prescribing the application of "the Utah Rules of Civil Procedure to the

extent that they are consistent with this chapter" but providing no mention of the Utah Rules of Evidence). In other words, if the UGIA is as exclusive as Provo City claims, there would be no substantive legal basis upon which to file a claim against the government and no applicable rules of evidence.

¶12    Considering the statute as a whole, the UGIA's scheme establishes a hurdle for beginning claims against governmental entities that expressly bars a claimant from proceeding unless the hurdle is cleared: filing notice of a claim. *See id.* § 63G-7-402. The UGIA also establishes a specific limitations period beyond which no civil action may begin. *Id.* § 63G-7-403. The primary purpose of these provisions is to provide the government with notice which "afford[s] the responsible public authorities an opportunity to pursue a proper and timely investigation of the merits of [the] claim." *Shafer v. State*, 2003 UT 44, ¶ 7, 79 P.3d 936 (citation and internal quotation marks omitted). Assuming the plaintiff complies with these requirements, the UGIA's purpose is satisfied.

¶13    Provo City further argues, because the UGIA contains a specific limitation period for initiating actions against governmental entities, the absence of any language regarding the right to renew an action means the legislature intended to bar the application of a general renewal provision.[4] We are not

---

4. Provo City also argues the UGIA bars the use of the Savings Statute because the UGIA requires strict compliance. *See Rushton v. Salt Lake County*, 1999 UT 36, ¶ 19, 977 P.2d 1201 (noting that strict compliance with the notice of claim provisions in the UGIA is required for waiver of governmental immunity). Provo City suggests that filing a claim pursuant to the Savings Statute means Appellants' action was not in strict compliance with the UGIA's limitations. We are not persuaded.

As discussed above, Provo City concedes that Appellants' action "would meet the qualifications required in the savings

(continued...)

persuaded. In *Standard Federal Savings & Loan Ass'n v. Kirkbride*, the Utah Supreme Court recognized the remedial purpose of general renewal statutes and concluded that they apply in the absence of an expressed intent to bar them. 821 P.2d 1136, 1138 (Utah 1991). In an argument similar to Provo City's, Kirkbride contended that the general renewal statute did not apply where the statute authorizing the underlying action had its own time limitation because "[b]y including an explicit time limit in the particular statute, the legislature ha[d] implicitly rejected application of a general extension statute." *Id.* at 1137. The supreme court disagreed: "If that is what the legislature intended to accomplish, it certainly knows how to do so." *Id.* at 1138. It added that "[t]he relevant inquiry is whether the legislature made plain an intention to bar forever claims of those who are guilty of a procedural misstep," and recognized that by initially filing a timely complaint, as required by the Savings Statute, Kirkbride had received notice and all benefits that the initial filing limit conferred upon him. *Id.* at 1138–39. The same reasoning applies here.

---

(…continued)
statute" if the Savings Statute applied to the UGIA. *See Ewing v. Department of Transp.*, 2010 UT App 158, ¶ 7, 235 P.3d 776 (reiterating that the Savings Statute can only preserve a claim if three requirements are met including that "the original complaint [was] filed within the statute of limitations"). Compliance with the Savings Statute under those circumstances would therefore equate to compliance with the UGIA's requirements. Moreover, except for stating that Appellants "fail[ed] to strictly comply with the [UGIA]," Provo City points to nothing of consequence beyond the UGIA's "comprehensive" nature. Because it does not develop this argument with reasoned analysis, we decline to address it further. *See* Utah R. App. P. 24(a)(9), (b).

¶14 The Savings Statute applies to claims filed against the government pursuant to the UGIA because, to the extent that they relate to one another, they are complementary. The plain language of the Utah Code indicates that the Savings Statute applies to "*any* action" unless displaced by a different limitation prescribed by statute. *See* Utah Code Ann. §§ 78B-2-102, -111 (LexisNexis 2012) (emphasis added). Nothing in the Savings Statute expressly prohibits its application to claims against governmental entities or limits its application to claims between private parties. *See id.* §§ 78B-2-101 to -117. Moreover, the Savings Statute is not an avenue to circumvent the UGIA's notice and filing requirements; it provides a remedial safeguard to help prevent a claimant's procedural misstep from terminating the claimant's causes of action. The only circumstances in which the Savings Statute would apply to a claim against the government are those in which the plaintiff has filed a timely notice of claim and begun an action within the UGIA's prescribed requirements.[5]

CONCLUSION

¶15 Considering the plain language of these statutes, reading them in harmony with each other, and being mindful not to read any provision in a manner that would render any other part

---

5. We note that in *Madsen v. Borthick*, the Utah Supreme Court determined that the version of the Savings Statute then in effect could extend the time for bringing an action under the UGIA. *See* 769 P.2d 245, 254 (Utah 1988). This court is mindful that the legislature may have intended to change the applicable procedural scheme with the UGIA's statutory amendments made since *Madsen*, but we are not persuaded that adopting the language "single, comprehensive" did so. *Compare* Utah Code Ann. §§ 63-30-1 to -38 (Michie 1978 & Supp. 1983), *with id.* §§ 63G-7-101 to -904 (LexisNexis 2011).

inoperative, we conclude that the UGIA does not displace the Savings Statute. Compliance with the UGIA's limitations periods for filing notice of claim and filing an action in district court is necessary to secure the government's waiver of immunity, but we reject Provo City's narrow interpretation of the UGIA. Although the UGIA's limitations periods for filing notices and beginning court actions displace the statute of limitations provided elsewhere in the Utah Code, absent the legislature's express intent to preclude the use of the Savings Statute when a litigant has filed a timely action that was later dismissed for reasons other than on the merits, we will not block access to it. We therefore reverse and remand for reinstatement of Appellants' action.

_____